**In the Matter of the WELFARE OF A.V., A.V., A.V., and A.V., Children.**

Nos. CX–98–2129, C7–98–2167.

Court of Appeals of Minnesota.

June 8, 1999.

Allen P. Eskens, Mankato, for appellant mother.

John C. Peterson, Farrish, Johnson & Maschka, Mankato, for appellant father.

Bradley J. Peyton, Assistant County Attorney, Mankato, for respondent Blue Earth County.

Considered and decided by G. BARRY ANDERSON, Presiding Judge, CRIPPEN, Judge, and AMUNDSON, Judge.

## OPINION

CRIPPEN, Judge.

This case arises on a judicial determination to terminate the parental rights of parents whose disabilities have been well-documented and for whom substitute care had been necessary for a long duration, but otherwise under circumstances where there was limited evidence that these disabilities manifested themselves harmfully to the children. Appellants dispute the existence of statutory grounds for termination and contend that the county authorities did not make reasonable efforts to reunite the parents and children. Concluding that the evidence is adequate to demonstrate the palpable unfitness of the parents, we affirm.

## FACTS

Glen and Shannon Voss are the parents of two sets of twins—boys, age five, and girls, age four.

Glen Voss fell off of a roof in a construction accident in 1988, sustaining permanent brain injury, which has affected both his cognitive functioning and his ability to control his anger. He is under the care of both a psychologist and a psychiatrist and is taking medication that improves but does not correct his ability to control his anger. Shannon Voss suffers from low cognitive functioning and a personality disorder.

One child in each set of twins is developmentally delayed. A psychologist who examined them termed them "special needs" children and believed that their conditions may move at some point into mental retardation. The other two children are within the normal range of development.

Blue Earth County commenced a first child-in-need-of-protection action against the Vosses in July 1995. This CHIPS petition appears to have arisen out of an alleged domestic abuse incident after which Shannon Voss also sought an order for protection. The CHIPS case was continued for six months and eventually dismissed.

A second domestic assault incident in August 1996 resulted in an order for protection and a criminal charge against Glen Voss (later dismissed). This incident also seems to have been the impetus for a second CHIPS petition filed in August 1996 and for a termination of parental rights petition filed in September 1996. After an evidentiary hearing, the trial court denied the termination petition. The children remained in foster care under the CHIPS petition and Blue Earth County developed a case plan.

In June 1997, Glen Voss hit a Human Service intern who was supervising the parents' visitation of their children. He was sentenced in November 1997.

This case arises out of a second termination petition filed in April 1998. After a contested hearing, the trial court terminated parental rights and this appeal followed.

## ISSUES

1. Does the evidence establish palpable unfitness?

2. Does the evidence establish the reasonable efforts of the county authorities?

## ANALYSIS

In termination proceedings, "appellate courts are limited to determining whether the findings address the statutory criteria, whether those findings are supported by substantial evidence, and whether they are clearly erroneous." *In re Welfare of D.D.G.*, 558 N.W.2d 481, 484 (Minn.1997). In all termination cases, our paramount concern is for the child's best interests. *See In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn.1990).

### 1. Palpable Unfitness

A parent's rights may be terminated upon a showing that he or she is "palpably unfit" in that he or she demonstrates "a consistent pattern of specific conduct before the child or * * * specific conditions directly relating to the parent and child relationship" of a duration or nature rendering the parent unfit to parent for the foreseeable future. Minn. Stat. § 260.221, subd. 1(b)(4) (1998).

Appellant Glen Voss argues that his disabilities have not manifested themselves in specific dangers to the children. He contends that there is, therefore, insufficient evidence of palpable unfitness. *See In re Welfare of S.N. & M.O.*, 423 N.W.2d 83, 90–91 (Minn.App.1988) (infrequent incidents do not rise to the level of palpable unfitness); *M.D.O.*, 462 N.W.2d at 378 (no showing of a pattern of abuse). Appellant Shannon Voss argues that she was successful in meeting the goals provided in the county's case plan.

We agree that if the issue of palpable unfitness were to be decided strictly on the basis of conduct and not on the conditions of the parents, termination of parental rights would be unwarranted under these circumstances.

The trial court determined that "it is absolutely not in the best interests of the children to continue to experiment with their young lives so that their parents can exhaust every possible, unrealistic alternative to termination of parental rights." From this it is evident that the condition of the parents was

the overwhelming consideration in the court's decision to terminate parental rights.

We conclude that the disabilities of the parents have been adequately established such that it is not error to terminate parental rights without additional efforts to expose the children to the inevitable dangers of having the children cared for by their parents. We are especially mindful in that respect of the current definition of palpable unfitness that includes a "consistent pattern" of conduct or "specific conditions." Minn.Stat. § 260.221, subd. 1(b)(4). This amendment makes it inappropriate to employ the language of the supreme court in *In re Welfare of Kidd*, 261 N.W.2d 833, 835 (Minn.1978) (putting conduct in front of condition), which was developed under a definition of palpable unfitness that said termination could be based on a finding "[t]hat the parents are unfit by reason of debauchery, intoxication or habitual use of narcotic drugs, or repeated lewd and lascivious behavior, or other conduct" likely to be detrimental to the child – but not on a finding of a specific condition. *See* Minn.Stat. § 260.221, subd. 1(b)(4) (1978).

Our reading of the legislative will in the definition of palpable unfitness is consistent with other developments in termination law. The prior definition and the judicial construction of the issue represented a parent-centered approach to termination law whereby termination would rarely occur and only when great parental fault was demonstrated. Under that regimen of the law, termination was grudgingly permitted with concentrated emphasis on the statutory preference to reunite parent and child, a demand for "grave and weighty reasons" for termination, and with limited deference given to the trial court findings. *See, e.g., In re Welfare of Solomon*, 291 N.W.2d 364, 369 (Minn.1980) (noting the "grave and weighty reasons" standard and also noting that "the best interests of the child are normally served by parental custody"). All of these declarations precede the

determination by the supreme court that the "best interests of the child" should [be] the paramount consideration. *See In re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn.1986) (recognizing the best interests of the child in termination proceedings).[1]

Amendment of the language concerning what constitutes palpable unfitness is only one of a number of legislative developments making termination a more plausible alternative out of concern for the best interests of the child. *See Gloria Christopherson, Minnesota Developments, Minnesota Adopts a Best Interests Standard in Parental Rights Termination Proceedings:* In re J.J.B., 71 Minn. L.Rev. 1263, 1266–78 (1987) (highlighting historical developments in Minnesota termination law).

In this case, both parents simply have no capacity to parent or to engage in constructive efforts to improve their ability to parent. The trial court acknowledged the inherent tragedy in its conclusion, noting particularly the "parent-child bond and relationship between [Glen] and the children." However vital our concerns for that relationship, they are overwhelmed by the trial court's direct finding that he "can not be trusted with the care of these children" and that 24–hour–a–day backup would be needed.

## 2. Reasonable Efforts

Glen Voss argues that the services provided to him were not realistic and that they set him up for failure by setting goals for an ideal parent. We note that especially within "Goal C" of the case plan, there are items such as a requirement to "[o]bserve each child's behavior and anticipate the next step * * * [with a goal of] prevent[ing] accidents or misbehavior by redirecting the child" and to "[d]emonstrate setting limits and discipline appropriate to the age of the child." This view of the case plan as too confusing and a recipe for failure was corrob-

1. Thus, in the years preceding *J.J.B.*, there were 80 termination decisions reviewed by the Minnesota appellate courts, of which 20 were reversed; in the 13 years since *J.J.B.*, there have been only 16 reversals of the 227 cases considered. *Compare In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980) (noting the [previously] strong bur-

den upon the party seeking termination and the presumption that a natural parent is a fit and suitable person to be entrusted with the care of a child), *with M.D.O.*, 462 N.W.2d at 378 (reinstating a trial court termination decision based on the best interests of the child).

 

orated by Dr. Darell Shaffer who testified on Glen's behalf.

The plan had few concrete goals effectively designed to help the parents gain a foothold toward the end of finding it possible to care for their children. But the significance of prior efforts of the county in a termination case is affected by evidence as to what further steps might be taken. In the context of a termination proceeding, a profitable approach on issues of whether demands in a case plan are realistic and measurable is to offer proof or suggestion regarding case plan demands for the future that would be realistic, feasible, productive and measurable. In this case, as the trial court and appellant Glen Voss recognized, only one suggestion for the future has been offered: Dr. Shaffer's suggestion for 24–hour care.

The demand of reasonable efforts is one that is entirely constructive, aimed at saving the savable among parents having difficulty providing care for their children. *See In re Welfare of S.Z.*, 547 N.W.2d 886, 892 (Minn. 1996) (recognizing that in some cases further efforts will be futile and, therefore, unreasonable). Viewed otherwise, the reasonable efforts requirement serves neither parents nor children, doing little more than to set up a roadblock to appropriate planning in the best interests of the child.

Here, the only remaining option is 24 hour in-house care, an option the trial court properly determined to be infeasible.

3. Ability to Parent All Four Children

The courts must consider whether one or another of the parents may be able to care for some but not all of the children. Child welfare decisions must be made with regards to each child in the proceeding. In the circumstances of this case, the record leaves no room for argument that termination would be any less appropriate for any one of the children than for the others. It is significant in this regard that two of the children are developmentally delayed, posing special challenges for the parents. And each of the developmentally delayed children has a twin with whom the child has always lived.

## DECISION

Because of the ongoing conditions of the parents, amply demonstrated by the trial court, the trial court did not err in finding that Glen and Shannon Voss are now and will be for the foreseeable future, palpably unfit to parent. Moreover, the court properly determined that the county has made reasonable efforts to reunite parents and children and that any additional efforts would be futile under the circumstances.

**Affirmed.**