In the Matter of the WELFARE OF
the CHILDREN OF S.W., M.M.,
and J.A., Parents.

No. A06–1175.

Court of Appeals of Minnesota.

Jan. 30, 2007.

Review Denied March 28, 2007.

Michael Kinney, Greta Smolnisky, Smolnisky & Kinney, P.C., Willmar, MN, for appellant S.W.

William J. Watson, Big Stone County Attorney, Ortonville, MN, for respondent Big Stone County.

Jessica L. Ryan, BlueDog, Paulson & Small, P.L.L.P., Minneapolis, MN, for respondent Grand Portage Band of Chippewa.

Thomas C. Mahlum, Marta M. Chou, George D. Carroll, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, MN, for respondent guardian ad litem.

Considered and decided by KALITOWSKI, Presiding Judge; WRIGHT, Judge; and CRIPPEN, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

KALITOWSKI, Judge.

Appellant S.W. challenges termination of her parental rights to her children, T.W. and G.W., arguing that the district court erred by (1) finding appellant palpably unfit; (2) finding that reasonable and active efforts to unify the family had failed; (3) admitting expert testimony from an unqualified witness and giving that testimony too much weight; and (4) denying a petition to invalidate the termination of parental rights proceedings based on Indian Child Welfare Act (ICWA) violations that occurred during earlier temporary foster placement proceedings.

## FACTS

Appellant S.W. is the mother of three children, two of whom, T.W. and G.W., are involved in this case. Because T.W.'s father is eligible for membership in the Grand Portage Band of Chippewa Indians (respondent Band), nine-year-old T.W. is also eligible. Five-year-old G.W. is not eligible for membership nor a member of any Indian tribe. Neither child's father retains parental rights.

Appellant's oldest child, T.W., was born in 1997. In late 2001, appellant gave birth to twins, G.W. and B.W. The twins were born prematurely and required extensive hospitalization. During this period of hospitalization, health-care workers became concerned that appellant was unable to care for herself and her children and ultimately a child in need of protection (CHIPS) petition was filed in Anoka County.

Pursuant to the developed case plan, appellant:

> participated in Semi–Independent Living Skills programming to assist her

with money management and learning basic living tasks. She was involved in family-based parenting skills therapy to assist her in learning parenting techniques. An Adult Disabilities social worker was assigned to support [appellant] concerning her developmental disability.

A psychological assessment revealed that appellant has a dual diagnosis of mild mental retardation and borderline personality disorder with dependent and paranoid features, as well as "additional personality traits of impulsivity, developing unstable and intense interpersonal relationships, marked reactivity of mood, pervasive mistrust and suspiciousness." Appellant's case plan was in effect for two-and-one-half years, during which time appellant improved her parenting skills. But social service professionals remained concerned because of what the district court found to be appellant's "questionable relationships with men reflecting impulsivity and lack of insight for her personal safety and the safety of her children."

The twins continued to have medical problems and appellant voluntarily terminated her parental rights to B.W. in January 2004. Six months later, Anoka County closed the existing CHIPS case as to all of appellant's children. The district court found that "[i]t was anticipated that after court supervision ended [appellant] would remain in Anoka County and would voluntarily continue to receive self-sufficiency, family based, and DD (developmental disability) services." Instead, appellant, pursuing a romantic relationship, relocated her family to Big Stone County within two months of the Anoka County case closure.

Big Stone County (respondent County) social services became involved with appellant on referral from Anoka County. Ap-

Minn. Const. art. VI, § 10.

pellant initially refused services, but soon sought counseling for T.W. Two months later, respondent County filed a CHIPS petition based on allegations that appellant had hit T.W., causing a loose tooth.

Respondent Band participated in an April 2005 admit/deny hearing. The parties agreed to continue the petition for dismissal if appellant participated in a case plan and agreed not to relocate until certain conditions were met. The case plan required psychological and parental capacities evaluations, respite care for the children, continued counseling for T.W., and parenting training for appellant. A month later, appellant began participating in adult mental health services as well.

In July 2005, appellant became suicidal and voluntarily placed the children in foster care while she was hospitalized. Respondent Band was not notified of or involved in the placement.

Upon appellant's release from an eight-day hospital stay, she demanded return of her children. But Big Stone County denied her request in order to give her the weekend to get used to being out of the hospital before the children returned home. Two days later, appellant was rehospitalized for suicidal ideations. After six days she checked herself out against medical advice.

Respondent County brought a motion to revoke the continuance for dismissal. Although respondent Band did not receive formal notice and did not appear at this August 17 hearing, the record indicates the Band received informal notice. Appellant admitted that her mental health precluded her from caring for her children at that time and they remained in voluntary foster care. Although the children had been placed outside the home for more than six months, because appellant was actively pursuing mental health services

the district court extended the time limits for permanency until February 2006.

At a dispositional hearing held later that month, the district court found that reasonable and active efforts had failed to prevent foster placement due to appellant's acute mental health difficulties. Respondent County took custody of the children for involuntary placement in foster care. No ICWA-qualified expert testified at this hearing.

A case plan adopted at this hearing required appellant to complete a six-month Dialectical Behavior Treatment (DBT) program, undergo a parental capacities evaluation, and continue sessions with her individual therapist and psychologist. The record indicates that appellant did not complete DBT treatment.

From August until November, appellant and her children continued to receive services from respondent County. Appellant received psychological counseling and extensive mental health services. The district court noted that "[r]ecords indicate that in the fall of 2005 very few days went by when the mental health worker did not have to render some sort of assistance to the mother, whether it was arranging transportation, setting up appointments or just generally allowing [her] to vent relating to her stresses and frustrations." Appellant refused to participate in developmental disability services, and although family counseling was discontinued because the children were in foster care, the children received foster support counseling. The district court found these services both active, occurring sometimes weekly, and reasonable, "particularly because they encompassed virtually all services available in the area." The district court found that the efforts were only marginally successful, due mostly to appellant's "limited capacities to both understand and integrate parenting techniques

due to her limited intellectual capacities, her defensiveness and confrontive nature occasioned by her personality disorder, and her continuing resentment and distrust of social workers and child protection workers."

During this time, respondent County arranged for appellant to visit with her children. Some visits went well, others did not. In November, her visits were increased to three times a week for two hours each, with half of the visits unsupervised. The district court found that the erratic quality of the visits continued: "[appellant] showed little ability to 'multitask' or to effectively adapt to the [children's] ambivalence, boredom, or misbehavior in any given situation." Appellant lacks an ability to think "outside the box" and cannot extend learned skills to new situations.

In a dispositional review hearing held on November 9, 2005, the district court ordered respondent County to make a decision within 30 days either to return the children to appellant or to petition to terminate her parental rights. By the end of the month, respondent County petitioned to terminate appellant's parental rights.

Appellant and her children continued to receive social services from respondent County while the petition was pending. Appellant restarted DBT treatment and parenting techniques training, and indicated that she felt she would need parenting instruction to continue until the children turned 18.

In March 2006, respondent Band, alleging violations of ICWA during the CHIPS proceedings, filed a petition to invalidate the placement and the termination of parental rights (TPR) proceedings under ICWA, 25 U.S.C. § 1914 (2004). The district court deferred its decision on the petition until evidence could be heard at trial. Following a six-day hearing that included testimony of two ICWA experts, the district court denied respondent Band's petition to invalidate and terminated appellant's parental rights on May 23, 2006.

## ISSUES

1. Did the district court err by finding beyond a reasonable doubt that appellant was palpably unfit to parent her children?

2. Did the district court err by finding that active and reasonable efforts were made to reunify the family?

3. Did the district court err by admitting expert testimony from an unqualified witness and giving that testimony too much weight?

4. Did the district court err by denying a petition to invalidate the TPR proceedings on the ground that ICWA was not followed during the CHIPS proceedings?

5. Did the district court err by rejecting respondent guardian ad litem's arguments that ICWA did not apply in this case?

## ANALYSIS

■ On appeal from a decision terminating parental rights, "appellate courts are limited to determining whether the findings address the statutory criteria, whether those findings are supported by substantial evidence, and whether they are clearly erroneous." *In re Welfare of D.D.G.*, 558 N.W.2d 481, 484 (Minn.1997). "Considerable deference is due to the district court's decision because a district court is in a superior position to assess the credibility of witnesses." *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn.1996).

■ District courts may order termination of parental rights on the basis of one or more of the nine criteria listed in Minn.Stat. § 260C.301, subd. 1(b) (2004).

But because a child's best interests are a paramount consideration in TPR proceedings, the district court must also find that termination of parental rights is in the child's best interests. Minn.Stat. § 260C.301, subd. 7. In addition, here, the district court must find that "reasonable" and "active" efforts failed to reunite the family. 25 U.S.C. § 1912(d) (2004); Minn. Stat. § 260C.301, subd. 1(b)(5)(iv). The district court's findings must conform to the statutory requirements. *In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980).

## I.

Appellant asserts that the district court erred by finding that she is palpably unfit to parent her children because it relied on speculative expectations in making its determination. We disagree.

■ Minnesota law supports the district court's decision.

A parent's rights may be terminated upon a showing that he or she is "palpably unfit" in that he or she demonstrates "a consistent pattern of specific conduct before the child or ... specific conditions directly relating to the parent and child relationship" of a duration or nature rendering the parent unfit to parent for the foreseeable future.

*In re Welfare of A.V.*, 593 N.W.2d 720, 721 (Minn.App.1999) (citing and quoting Minn. Stat. § 260.221, subd. 1(b)(4), *review denied* (Minn. Aug. 25, 1999)); *see also In re Welfare of S.Z.*, 547 N.W.2d 886, 892 (Minn.1996).

■ Here, the district court considered testimony from several social services and health-care providers who expressed serious doubt as to appellant's future ability to parent her children. Appellant herself stated that she would need parenting instructions for more than 10 years, or until the children reached adulthood. The dis-

trict court found, beyond a reasonable doubt and based on evidence including testimony of qualified expert witnesses, that the continued custody of the children by appellant would likely result in serious emotional damage to the children. *See* 25 U.S.C. § 1912(f).

Because the district court found that appellant's capability to care for her children is unlikely to improve in the foreseeable future, the court appropriately decided to terminate appellant's parental rights. *In re Welfare of A.V.*, 593 N.W.2d at 722 (upholding termination of parental rights where parents' mental illnesses and disabilities precluded them from improving their parenting skills); *In re Welfare of T.M.D.*, 374 N.W.2d 206, 212 (Minn.App. 1985) (affirming termination of parental rights where there was ample evidence of appellant's long history of extreme psychological and behavioral problems and strong expert testimony that her improper behavior would continue into the future), *review denied* (Minn. Nov. 25, 1985).

We conclude that the district court did not err in finding appellant palpably unfit to parent T.W. and G.W.

## II.

■ Appellant argues that respondent County's efforts to reunify the family were not reasonable, as required by Minn.Stat. § 260C.301, subd. 1(b)(5)(iv). In determining whether reasonable efforts were made, a district court should consider whether they were:

(1) relevant to the safety and protection of the child;

(2) adequate to meet the needs of the child and family;

(3) culturally appropriate;

(4) available and accessible;

(5) consistent and timely; and

(6) realistic under the circumstances.

Minn.Stat. § 260.012(h) (2006). "Reasonable efforts" at rehabilitation are services that "go beyond mere matters of form so as to include real, genuine assistance." *In re Welfare of H.K.*, 455 N.W.2d 529, 532 (Minn.App.1990), *review denied* (Minn. July 6, 1990). The quality and quantity of efforts to rehabilitate and reunify the family impact the reasonableness of those efforts. *In re Welfare of A.H.*, 402 N.W.2d 598, 604 (Minn.App.1987) (finding provision of homemaker visits, parenting skill instruction, day-care for children, special attention to children's developmental needs, and transportation to therapy sessions sufficient to establish reasonable efforts).

Appellant also argues that respondent County's efforts were not active as required by ICWA. 25 U.S.C. § 1912(d) (2004). Although ICWA does not define active efforts, the Minnesota Tribal/State Indian Child Welfare Agreement does:

> "*Active [e]fforts*" means active, thorough, careful, and culturally appropriate efforts by the LSSA to fulfill its obligations under [Indian Child Welfare Act], [Minnesota Indian Family Protection Act], and the [Department of Human Services] Social Services Manual to prevent placement of an Indian child and at the earliest possible time to return the child to the child's family once placement has occurred.

Minn. Tribal/State Indian Child Welfare Agreement at 5, Minn. Dep't of Human Servs. Bulletin # 99–68–11 (Aug. 25, 1999) (hereinafter Tribal/State Agreement).

■ Here, the record supports the district court's findings that respondent County provided counseling for T.W., DBT therapy, supervised and unsupervised visitations with the children, psychological and parental capacities evaluations, sessions with an individual therapist and psychologist, parenting technique instructions, and foster support counseling for the children. Moreover, the district court extended the time required for permanency determinations due to appellant's participation in her case plans, and appellant's visitation schedule was increased to three visits a week for two hours each, half of which were unsupervised. And pending the termination procedure, respondent County continued to provide services.

The record indicates that respondent County provided frequent and varied services over a period of several years. Despite these services, several social services and healthcare providers concluded that appellant would not be able to care for her children in the foreseeable future. We conclude that the district court did not err by finding that active and reasonable efforts failed to reunite the family.

### III.

Appellant argues that the district court erred both by accepting Lillian Reese as an expert witness under ICWA and by giving her testimony too much weight. Because appellant did not make these objections to Reese's testimony to the district court, they are not properly before us. *Sauter v. Wasemiller*, 389 N.W.2d 200, 202 (Minn.1986). But even if we address these arguments, they fail.

■ "Generally, whether a witness qualifies as an expert is an issue within the discretion of the district court." *In re Welfare of Children of J.B.*, 698 N.W.2d 160, 166 (Minn.App.2005), *review dismissed* (Minn. May 3, 2005). But in ICWA cases, designation as an expert is controlled in large part by the Minnesota Tribal/State Agreement on Indian Child Welfare. *Id.; see also* Tribal/State Agreement at 9. According to the agreement, an expert is someone who is:

a. a member of the Indian child's tribe, who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and child rearing practices;

b. a lay expert witness who has substantial experience in the delivery of child and family services to Indians and extensive knowledge of prevailing social and cultural standards; or

c. a professional person who has substantial education and experience in the area of his/her specialty and substantial knowledge of prevailing social and cultural standards and child rearing practices within the Indian community.

Tribal/State Agreement at 9.

■ Although the challenged expert, Ms. Reese, is not a member of T.W.'s tribe, she is a member of the larger tribal consortium that includes T.W.'s tribe. And the record indicates that Ms. Reese has more than 20 years experience in providing social services, with 14 of those as social services director for the Leech Lake Reservation, supervising mental health, family services, and chemical dependency programs. She also has experience in an Indian Child Welfare Program and has child-rearing practice and was involved in the adoption of the Minnesota Tribal/State Agreement on Indian Child Welfare. We conclude that because Ms. Reese could qualify as an expert witness under either section b or c of the definition, the district court did not err by finding that Ms. Reese is an ICWA-qualified expert.

■ We reject appellant's argument that the district court gave too much weight to Ms. Reese's testimony. The district court was in the best position to judge witness credibility. Minn. R. Civ. P. 52.01 ("[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). "The weight to be given any testimony, including expert testimony, is ultimately the province of the fact-finder." *In re Welfare of Children of J.B.*, 698 N.W.2d at 167. Other than stating that Ms. Reese is not as qualified as the ICWA-qualified expert who represented respondent Band, appellant presents no argument. Because we defer to the credibility determinations of the district court, we conclude that the district court did not err in determining the weight to be given the testimony.

## IV.

■ Appellant claims that respondent County and the district court violated ICWA when it: (1) placed appellant's children in foster care when appellant was hospitalized without a recorded consent form or notice to the Band; (2) did not immediately return appellant's children to her care upon her release from the hospital; (3) failed to give proper notice for the August 17, 2005 admit/deny hearing; and (4) failed to present expert testimony at the August 22, 2005 dispositional hearing. Based on these alleged ICWA violations that occurred during the CHIPS proceedings, appellant asks that the TPR proceedings be invalidated.

ICWA applies to certain child custody proceedings involving Indian children, including foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. 25 U.S.C. § 1911 (2004). State court proceedings subject to ICWA have more requirements than non-ICWA-covered proceedings: the petitioning County must give notice to the child's tribe, the district court must generally make findings by either clear and convincing evidence (foster placement) or evidence beyond a reasonable doubt (termination of parental rights), and, for involuntary proceedings, ICWA-qualified experts must testify at the hearing. 25 U.S.C. § 1912(a), (e)-(f).

In addition, there is a provision whereby an ICWA-covered state-court proceeding can be invalidated:

Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

25 U.S.C. § 1914 (2004).

In March 2006, respondent Band filed a petition to invalidate the placement and TPR proceedings pursuant to section 1914 of ICWA. The district court deferred its decision on the petition until evidence was received at the TPR hearing. Appellant argues that refusal to invalidate the TPR proceeding is error.

While no Minnesota case has addressed invalidation of a termination based on earlier ICWA violations, in *In the Interest of J.W.*, the Iowa Court of Appeals considered a similar issue. *In the Interest of J.W.*, 528 N.W.2d 657 (Iowa Ct.App.1995). There, a parent requested invalidation of termination proceedings because the district court allegedly violated section 1912(e) of ICWA by placing the children in foster care and continuing the placement without testimony of qualified expert witnesses. *Id.* at 661. The Iowa court held that "[s]ection 1914 ... 'does not provide for invalidation of a valid separate action because of an invalid prior one.'" *Id.* (quoting *In re M.E.M.*, 209 Mont. 192, 679 P.2d 1241, 1243 (1984) and citing *D.E.D. v. State*, 704 P.2d 774, 782 (Alaska 1985)). It therefore declined to invalidate the termination proceedings. *Id.* The court noted that although the district court took judicial notice of the earlier proceedings, it did not rely exclusively on its earlier findings to reach its conclusion to terminate [mother's] parental rights. It made specific findings based on testimony of three qualified ICWA experts at the termination hearing. These witnesses each concluded the children were likely to suffer serious physical or emotional harm if returned to their parent's custody.

*Id.*

The facts here are similar. Based on four alleged ICWA violations that occurred during the CHIPS proceedings, appellant requests invalidation of the later TPR proceedings, which were conducted in accordance with ICWA. The record here indicates that two ICWA-qualified experts testified at the TPR proceedings and the district court determined, based on this and the testimony of other social services providers at the TPR hearing, that termination of appellant's parental rights was in the best interest of the children.

We agree with the reasoning of the Iowa Court of Appeals and we decline to extend the language of section 1914 to provide the remedy appellant seeks. On this record, the alleged ICWA violations that occurred during the temporary foster care placements do not, as a matter of law, require that the district court invalidate the subsequent termination of parental rights proceedings. Thus, we conclude that the district court did not err by denying appellant's petition to invalidate the TPR proceedings.

### V.

█ In its appellate brief, respondent guardian ad litem argues that ICWA should not be applied in this case because: (1) T.W. is not being removed from an existing Indian family and (2) application of ICWA would violate equal protection

principles, due process principles, and the Tenth Amendment. The district court concluded that these arguments were without merit. Because respondent failed to file a notice of review challenging the district court's decision on these issues, they are not properly before us and we decline to address them. *See Sauter,* 389 N.W.2d at 202.

### DECISION

We conclude that on this record the district court did not err by (1) finding beyond a reasonable doubt that appellant is palpably unfit to parent her children; (2) finding that active and reasonable efforts failed to reunify the family; (3) finding that Ms. Reese is an ICWA-qualified expert and crediting her testimony as it did; or (4) denying a petition to invalidate termination of parental rights proceedings based solely on alleged Indian Child Welfare Act violations that occurred during earlier temporary foster placement proceedings.

**Affirmed.**