MIDWAY CENTER ASSOCIATES v.
MIDWAY CENTER, INC., AND ANOTHER.

237 N. W. 2d 76.

December 19, 1975—No. 45467.

*Maun, Hazel, Green, Hayes, Simon & Aretz, Richard E. Aretz, Geoffrey P. Jarpe,* and *Philip A. Pfaffly,* for appellants.

*Thiel, Sorenson & Hansing* and *Russell A. Sorenson,* for respondent.

Heard before Sheran, C. J., and Rogosheske and Knutson, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

This appeal challenges the trial court's interpretation of provisions concerning liability for the payment of real estate taxes in a written agreement for the sale and purchase of a shopping center in St. Paul. The parties to the agreement are sellers-

defendants, Midway Center, Inc., and Ellerbe Architects, Inc. (of which Midway Center, Inc., is a wholly owned subsidiary), and purchaser, K-L-K Homes, Inc., to which plaintiff, Midway Center Associates, is successor. The purchaser paid the taxes as originally assessed and by this action sought reimbursement from the sellers of $14,247.82, an amount claimed to be in excess of plaintiff's contractual liability. The trial court, upon stipulated facts and documents, awarded $7,123.91, and defendants appeal. Since we are not persuaded that the trial court's interpretation reflects an error prejudicial to the sellers, we affirm.

On December 10, 1969, the parties executed the agreement, which included the following provisions:

"8. *CLOSING—SELLER'S PERFORMANCE*

"At the Closing, Seller shall deliver to Purchaser the following:

\* \* \* \* \*

"(m)  An assignment of 50 per cent of Seller's rights and claims in respect of refunds on account of overassessment of real estate taxes in respect to the Center, for the 1969 real estate taxes payable in 1970.

\* \* \* \* \*

"10. *CLOSING—ADJUSTMENTS AND APPORTIONMENT*

\* \* \* \* \*

"(c)  The Purchaser shall assume and agree to pay the real estate taxes for the Center for the year 1969 in a sum not in excess of $200,000.00 (in the event the 1969 taxes are in excess of $200,000.00, the Seller shall remit to Purchaser the amount of such excess within ten (10) days after receipt of a copy of the tax statement), and the Seller shall assign to the Purchaser all of its right, title and interest in respect of all escrow deposits, which as of the date of closing shall include not less than $50,000.00 in real estate tax escrows, made pursuant to the provisions of the TIAA Mortgage. In addition thereto Seller shall pay

to Purchaser for and on behalf of the 1969 real estate taxes the sum of $6,250.00 each month commencing on the second day of January, 1970, until the sum of $56,250.00 has been so paid."

At the time this agreement was negotiated and executed, the sellers, with the knowledge of the purchaser, had pending an abatement petition challenging the assessed value of the property for the purpose of seeking a reduction of 1969 real estate taxes. Based on the original assessed value and before a decision on the abatement petition, the tax authorities determined the 1969 taxes to be $214,247.82. Under Minn. St. 1969, § 279.01, half of this amount was payable prior to June 1, 1970, and the remainder prior to November 1, 1970. However, the purchaser paid the entire amount on April 6, 1970, as a precondition under Minn. St. 1969, § 272.12, to recording its conveyance of the property. Thereafter, the sellers' abatement petition resulted in a reduction of $34,725.28 in the 1969 taxes, so that the total tax was $179,522.54 rather than $214,247.82 already paid by the purchaser. Pursuant to paragraph 8(m) of the agreement, half of the refund, or $17,362.64 was remitted by the sellers to the purchaser on August 7, 1970. The sellers refused a demand for additional reimbursement of $14,247.82, the purchaser claiming under paragraph 10(c) that this amount was paid in excess of its $200,000 commitment. The purchaser sued.

The trial court appears to have adopted the purchaser's argument that when $214,247.82 was originally paid, the excess above $200,000 was an advance within the meaning of the parenthetical language in paragraph 10(c). However, it then held that the refund in which the purchaser obtained a 50-percent interest under paragraph 8(m) was the amount by which the actual tax of $179,522.54 after abatement differed from the purchaser's total undertaking of $200,000. Thus, the purchaser was entitled to the sum of $14,247.82 under paragraph 10(c) plus $10,238.73 under paragraph 8(m), or $24,486.55. Having already received $17,362.64, the purchaser was entitled to judgment in the amount of $7,123.91.

Where contractual provisions are susceptible of variant interpretations and in no way dependent upon a resolution of controverted extrinsic evidence, the issue is one of law for the court to resolve. Town & Country Shopping Center v. Swenson Furniture Co. 261 Minn. 100, 104, 110 N. W. 2d 525, 528 (1961).

The objective of judicial interpretation of disputed provisions of a contract is to ascertain and give effect to the parties' intention. Hartung v. Billmeier, 243 Minn. 148, 66 N. W. 2d 784 (1954). This, the courts, both trial and appellate in cases such as this, seek to accomplish by placing themselves in the position of the parties at the time the agreement was negotiated and executed and, upon consideration of the agreement as a whole and the plain meaning of the language used, viewed in the light of the surrounding circumstances, endeavoring to arrive at what the parties must have reasonably contemplated. Donnay v. Boulware, 275 Minn. 37, 144 N. W. 2d 711 (1966).

Since the trial court has resolved the issue and the purchaser does not challenge its interpretation on this appeal, we necessarily limit our review to whether the sellers' contended interpretation, when compared to all other plausible interpretations, most clearly reflects what the parties must have reasonably contemplated. Significantly, the sellers have the burden of persuasion described in Waters v. Fiebelkorn, 216 Minn. 489, 495, 13 N. W. 2d 461, 464 (1944):

"It is well to bear in mind that on appeal error is never presumed. It must be made to appear affirmatively before there can be reversal. Not only that, but the burden of showing error rests upon the one who relies upon it. *And we do not reverse unless there is error causing harm to the appealing party.* In other words, error without prejudice is not ground for reversal." (Italics supplied.)

See, also, Loth v. Loth, 227 Minn. 387, 392, 35 N. W. 2d 542, 546, 6 A. L. R. 2d 176, 182 (1949).

In essence, the sellers' interpretation is that the parties knew

an abatement petition was pending and anticipated that it would be decided before the second installment of the tax was payable on November 1, 1970, and, accordingly, that the "real estate taxes" which the purchaser agreed to pay in paragraph 10(c) up to a maximum liability of $200,000 referred to the difference between the original tax of $214,247.82 and 50 percent of the abatement, $17,362.64, or $196,885.18. By way of demonstrating the equities, the sellers emphasize that they paid over half of the purchaser's tax burden under the escrow provisions of paragraph 10(c).

Regardless of the equities, we do not believe the escrow feature elucidates the intent of the parties as reflected by the plain meaning of the language in the disputed provisions viewed in the light of the surrounding circumstances. There is no extrinsic evidence of record that the parties anticipated that the abatement petition would be decided before the second installment was paid on November 1, 1970. Indeed, selection of the word "refunds" in paragraph 8(m) suggests that the parties expected all taxes to have been paid. The sellers' interpretation depends upon reading the word "refunds" to mean abatement or reduction of an amount due rather than the return of an amount already paid. Similarly, it depends upon reading the phrase "real estate taxes" in paragraph 10(c) to mean neither the original tax assessment nor the actual tax after abatement but, instead, an artificial calculation payable to no taxing authority and equal to the original tax assessment less half the abatement. Finally, the sellers' view gives no effect to the parenthetical language in paragraph 10(c).

The sellers have presented no extrinsic evidence which persuades us that the parties intended to disregard the literal meaning of their words. Whatever the shortcomings of the trial court's interpretation, we are persuaded that it did not result in prejudicial error to the sellers and that the sellers' view is not clearly the most plausible. Therefore, we are compelled to affirm the trial court.

Affirmed.