Timothy M. **TEACHOUT**, Respondent,

v.

Dennis A. **WILSON**, defendant and third party plaintiff, Appellant,

v.

Howard H. **HUNERBERG**, third party defendant, Respondent.

No. C2–85–326.

Court of Appeals of Minnesota.

Nov. 5, 1985.

Review Denied Dec. 30, 1985.

David B. Morse, Minneapolis, for Teachout.

Louis W. Brenner, Minneapolis, for Wilson.

John E. Thomas, St. Paul, for Hunerberg.

Heard, considered, and decided by SEDGWICK, P.J. and LESLIE and NIERENGARTEN, JJ.

## OPINION

SEDGWICK, Judge.

Respondent Timothy Teachout sued appellant Dennis Wilson for breach of a contract to sell a gas station. Wilson joined respondent Howard Hunerberg (Wilson's realtor) as a third party defendant. Hunerberg counterclaimed for his commission.

The trial court awarded Teachout $15,000 on the contract claim. It awarded Hunerberg a $5,000 commission. Wilson appeals both awards. He also argues that he was denied a fair trial.

We affirm in part and reverse in part.

### FACTS

Dennis Wilson owned a gas station in Bloomington. He operated the gas pumps and the retail area. He leased the back room, a service area, to a mechanic named Nelson.

Wilson and respondent Hunerberg, a real estate broker, executed a written listing agreement for the sale of Wilson's business. The asking price was $100,000 plus the cost of inventory. Hunerberg was to receive a 10% commission.

Hunerberg and Wilson later discussed changing the commission to either 5% or $5,000. This later agreement was never put into writing.

Teachout was interested in buying a service station. He was a partner in another station, but was planning to terminate that partnership. He anticipated a substantial payment for his interest in that station. Hunerberg informed Teachout of Wilson's station.

After considerable negotiation, Wilson and Teachout signed a purchase agreement. The price was $70,000 plus the cost of inventory on hand at closing. Teachout was to make a $21,000 downpayment; he was to execute a note secured by the business equipment for the balance of the purchase price.

The purchase agreement contained several contingencies. The portion of the contingencies clause at issue reads as follows:

This Agreement shall further be contingent upon Seller within five (5) days of the date of this Agreement providing Buyer with all access to all of the financial records, including income statements, profit and loss statements, balance sheets and ledger books of Seller. Buyer shall have 15 days in which to review such financial records, and if they shall not be acceptable, he may, upon written notice, terminate this Agreement, and upon such notice this Agreement shall be null and void. In the alternative, Seller may submit them to the banker of Buyer's choosing. If, on the basis of such financial records, the banker refuses to grant Buyer a loan for downpayment and operating capital, then this Agreement shall be null and void.

Teachout applied for a $25,000 loan from his bank. Wilson's records were submitted to that bank for review. The loan application was ultimately denied. The reasons given for denial were inadequate collateral and the fact that it was a request for 100% financing.

Teachout became concerned that the loan application process at his bank was taking too long. As a result, while that application was pending, he applied for a loan from another bank. The second bank approved a $25,000 loan.

In order to arrive at a final price, an inventory of the station had to be taken. The inventory was supposed to take place on the eve of the closing.

The day before the proposed closing Wilson refused to follow through with the inventory and sale. Nonetheless, Teachout, his attorney, and Hunerberg were present at the appointed time and place. Wilson did not appear. This lawsuit ensued.

Wilson argued that the contract was void because conditions precedent had not been satisfied. The trial court found that the contract was enforceable. It awarded Teachout $15,000 for his loss of bargain.

The trial court also found that the listing agreement had been orally modified to provide for a flat commission of $5,000. It further found that Teachout was a ready, willing, and able buyer. Thus, it awarded Hunerberg the $5,000 commission plus costs.

Wilson moved for amended findings or new trial. The trial court denied the motion.

## ISSUES

1. Were the contingencies of the purchase agreement met, thus creating an enforceable contract?

2. Is the trial court's $15,000 award to Teachout supported by the evidence?

3. Is respondent Hunerberg entitled to a commission on the aborted sale of Wilson's station?

4. Was Wilson denied a fair trial?

5. Was the trial court's award of deposition costs to Hunerberg an abuse of discretion?

## ANALYSIS

1. The objective of contract construction is to effect the parties' intent. *Midway Center Associates v. Midway Center, Inc.*, 306 Minn. 352, 237 N.W.2d 76 (1975). This is accomplished by the court:

> placing [itself] in the position of the parties at the time the agreement was negotiated and executed and, upon consideration of the agreement as a whole and the plain meaning of the language used, viewed in the light of the surrounding circumstances, endeavoring to arrive at what the parties must reasonably have contemplated.

*Id.* at 356, 237 N.W.2d at 78 (citation omitted).

Teachout chose the alternative of having Wilson's financial records submitted to "the banker of [his] choosing." Under this alternative, the agreement would be void "[i]f, *on the basis of such financial records*, the banker refuses to grant Buyer a loan * * *." (emphasis added). This language clearly provides that the banker's refusal of a loan must be based on Wilson's

financial records in order for the agreement to be void.

A form letter from the bank to Teachout showed that the loan was denied on the basis of inadequate collateral and the fact that it was a request for 100% financing. The witness from the bank was unable to state that Wilson's financial records were the basis of the denial.

A reading of the clause in context also indicates that the contingency was included in the agreement for Teachout's protection. The other alternative allows Teachout to examine the financial records himself and to terminate the agreement if the records were not acceptable. The language provides an escape mechanism for Teachout should the financial records disclose that the investment would not be a wise one. It is not an escape clause for Wilson.

■ 2. Wilson challenges the trial court's award of $15,000 to Teachout. The court awarded "loss of bargain" damages: the difference between the contract price and the fair market value at the time of breach. *See Greer v. Kooiker*, 312 Minn. 499, 253 N.W.2d 133 (1977).

The only evidence introduced to establish the market value on the date of breach was the price Wilson received from a third party in June 1984. Wilson testified that he had made substantial investments in the business between the time of the agreement with Teachout and the June 1984 agreement.

The trial court concluded the business was substantially the same in June 1984 as it had been on December 31, 1981. Therefore, it used the 1984 price for the 1981 market value in its damages computation.

The determination of actual damages is a fact question reviewable under the clearly erroneous standard. *Neilan v. Braun*, 354 N.W.2d 856, 858 (Minn.Ct.App.1984). The trial court's findings should be upheld if reasonably supported by the evidence. *Id.* at 859.

■ The only evidence Teachout introduced to prove his loss of bargain damages

was the purchase price of the business two and one-half years later.

While the amount paid by the second buyer * * * is properly admissible evidence of the market value, it is not conclusive evidence * * *.

*Greer*, 312 Minn. at 513, 253 N.W.2d at 143. The subsequent sale in *Greer* occurred within two months of the breach.

The evidence does not support the trial court's award. There is no evidence of the fair market value of the business at or near the time of the breach. The trial court's award must be reversed.

3. A real estate broker may not bring an action to recover a commission for the sale of real property "unless such property was first listed in writing for sale * * * with the person bringing or maintaining the action." Minn.Stat. § 82.33, subd. 2 (1980).

Wilson and Hunerberg executed a written listing agreement on July 1, 1981. The term was six months. The listing price was $100,000 plus the cost of inventory. A 10% commission was to be paid on the purchase price "whether at the price and upon the terms stated or at a different price or upon other terms accepted by me."

The trial court found that Wilson and Hunerberg orally modified the listing agreement to provide for a flat $5,000 commission. This finding is supported by the evidence.

Wilson argues that § 82.33 requires that any modification be in writing. We do not agree.

■ The intent of the statute is to protect innocent persons from unethical or overreaching conduct by real estate brokers. *R.M. Parranto Co. v. Bernick*, 354 N.W.2d 600, 604 (Minn.Ct.App.1984).

The statute is to be strictly construed to prevent overreaching claims by brokers on the basis of uncertain, contradictory, or perjured testimony. But it is not a license for real estate vendors to avoid paying for contracted brokerage services when the broker has substantially performed under the contract.

*Raddatz v. Northland Development Co.,* 352 N.W.2d 474, 478 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Oct. 11, 1984).

■ There is no danger of overreaching here. Under the agreement as written, Hunerberg would be entitled to a 10% commission or $7,000; under the modification, he is entitled to only $5,000. Thus, the statutory purpose of preventing unethical conduct by brokers is not violated by giving effect to the oral modification.

A broker is entitled to his commission when he has performed all that he undertook to perform. * * * To maintain a claim for his commission, a broker must show that he has procured a purchaser at the stipulated price and in accordance with the employment terms or that the principal has deprived him of the opportunity to do so without cause.

*Greer,* 312 Minn. at 510, 253 N.W.2d at 141.

The only reason this sale was never completed was because Wilson refused to cooperate. Wilson argues that he was not obligated to close the deal and pay Hunerberg's commission because Hunerberg breached his fiduciary duty and because Teachout was not a ready, willing, and able buyer.

The evidence does not support Wilson's claim that Hunerberg breached his fiduciary duty. In fact, the evidence shows that Wilson attempted to negotiate a deal behind Hunerberg's back to avoid paying his commission. In addition, Wilson was quite experienced in real estate transactions.

There is ample evidence to support the trial court's finding that Teachout was ready, willing, and able to complete the transaction. Teachout had satisfied all contingencies. He had a certified check for $21,000 on the date of closing. There was evidence showing that the income from the station would be adequate to meet the obligations of the note.

Hunerberg performed all of his obligations under the listing agreement. He procured a ready, willing, and able purchaser at an agreed upon price. Wilson had no cause to refuse to complete the sale. Therefore, Hunerberg is entitled to his commission.

4. Wilson's claim that he was denied a fair trial is without merit. He points to three circumstances which were purportedly prejudicial. First, he claims the trial judge should have recused himself and had the case reassigned. Second, he argues the trial court improperly injected itself into the trial. Finally, he argues that the scheduling of the trial over a five week period was prejudicial.

■ The recusal argument is based on the fact that the trial judge had earlier heard a case in which Nelson (Wilson's lessee) had been a party. Wilson was neither a party nor a witness in that case. Likewise, Nelson was neither party to nor witness in this case. There was no reason for the trial judge to remove himself. Wilson never filed an affidavit of prejudice. *See* Minn.R.Civ.Pro. 63.03. The transcript does not reveal any bias or unfair treatment.

■ The trial court may examine witnesses during the trial. Minn.R.Evid. 614. The trial court questioned several of the witnesses, including Wilson. The transcript reveals that the purpose of the questioning was to clarify the testimony. The trial court's actions were a proper exercise of the power granted by Rule 614, *not* improper action by the trial judge.

■ The trial of this case took place on five days over the course of a five week period. The record is voluminous. Much of the evidence is repetitious. It is clear that the trial court was well apprised of the facts and circumstances of the case. There is no reason to suspect that the manner of conducting the trial prejudiced Wilson.

■ 5. The trial court may, in its discretion, award reasonable costs to the prevailing party. Minn.Stat. § 549.04 (1980). The trial court awarded Hunerberg the cost of taking Wilson's deposition. There was no abuse of discretion.

## DECISION

We affirm the award to Hunerberg. We reverse the $15,000 award to Teachout because it is not supported by the evidence.

Affirmed in part and reversed in part.