*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1781**

In re the Irrevocable Trust of Kristin N. Kuelbs,
Donald C. Hill and Edwardena C. Hill, Trustees;

In re the Guardianship and Conservatorship of
Kristin Kuelbs.

**Filed August 18, 2014
Affirmed
Ross, Judge**

Dakota County District Court
File Nos. 19HA-CV-10-1541
19HA-PR-10-456

Corey J. Ayling, McGrann Shea Carnival Straughn & Lamb, Chtd., Minneapolis,
Minnesota (for respondents)

Kimberly Hill, Lonsdale, Minnesota (pro se appellant)

Jeffrey Hill, Lonsdale, Minnesota (pro se appellant)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Hooten,
Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Siblings of a woman under a guardianship and conservatorship fight over control
of her person and assets. The district court removed one sibling as conservator,
terminated a trust another sibling had created on the ward's behalf, and dismissed various

civil complaints the siblings brought against one another. Because the parties fail to show any errors of law or any prejudice in the district court's well-reasoned decision, we affirm.

## FACTS

Kristin Kuelbs, who has five siblings, suffered a head injury and memory loss during a 2001 car crash. She divorced in 2006, and, although she was relatively self-sufficient, some of her siblings believed that she had suffered from mental illness since before the crash and needed help managing her affairs.

After Kuelb's accident and divorce, her siblings sought to control her and her finances. Since 2007, three siblings, Donald, Jeffrey, and Kimberly Hill, have been fighting in different venues about Kuelbs's assets and her guardianship. This case is part of that ongoing fight. Donald, a lawyer who lives in Arkansas, set up a trust to control Kuelbs's assets after other siblings civilly committed her in Wisconsin as mentally ill. Jeffrey and Kimberly claim that Donald wasted assets, and they sought to recover those assets. Jeffrey and Kimberly filed the present case in Minnesota district court to require Donald to present a trust accounting and to terminate the trust. Donald and his wife, Dena, moved to remove Kimberly as Kuelbs's guardian and conservator. In their capacities as trustees, Donald and Dena filed a third-party complaint seeking to recover Kuelbs's assets that they alleged Jeffrey, Kimberly, and others wasted. The district court terminated the trust, dismissed all of the trust's claims, and removed Kimberly as conservator. Jeffrey and Kimberly appealed and the trust cross-appealed.

2

A more detailed description of the tortured course of events helps frame the current dispute. Another of Kuelb's sisters, Lynn Welk, helped Kuelbs retain an attorney in April 2005, after her husband filed for divorce. The lawyer conferred many times with Welk and Jeffrey but had only a few discussions with Kuelbs. In June, the attorney allegedly drafted a document granting Jeffrey power of attorney over Kuelbs's affairs. This power of attorney was apparently fraudulent.

Kuelbs's divorce was finalized in January 2006, and she received roughly $264,000 from the marital estate. Jeffrey exercised his power of attorney questionably. He opened a bank account, purportedly on behalf of Kuelbs, but he controlled it exclusively and never told Kuelbs it existed. He did not show the bank his alleged power of attorney until a year after he opened the account. He sold Welk Kuelbs's share of a family cabin where Kuelbs was residing and deposited the proceeds into his personal account. He drew checks on Kuelbs's account for his personal use. He eventually paid the funds back, but he did so only after four years and without interest.

During 2006, Jeffrey and Kimberly successfully petitioned a Wisconsin court to have Kuelbs civilly committed to a secure facility based on their stated mental health concerns. During her commitment, Kuelbs called Donald, who secured her transfer to a less secure facility in January 2007. A month later she was released to Donald's care. She then executed documents granting Donald and Dena the power to "do and perform all and every act, deed, matter, and thing whatsoever in and about [Kuelbs's] estate, property, and affairs . . . as [Kuelbs] might or could do in [her] own proper person." The power of

3

attorney was signed with the approval of Wisconsin authorities and in the presence of an attorney.

Kuelbs moved to Arkansas with Donald and Dena. Donald formed a trust using Kuelbs's assets in August 2007. The trust listed Kuelbs and Donald as grantors and Donald and his Nevada corporation as co-trustees. The trust was executed "pursuant to the applicable statutes of the State of Nevada" and stated that it should be construed and administered "in accordance with the laws of the State of Nevada" but that, "where applicable, the laws of the State of Arkansas" should control. In October, Donald paid himself and his law partners $42,515 out of the trust for work seeking visitation rights for Kuelbs to see her children and securing her release from the Wisconsin institutions.

Kimberly filed a petition in late 2007 in Arkansas requesting that the court appoint a guardian for Kuelbs. While Kimberly's guardianship petition was still pending in Arkansas, the trust and Kuelbs sued Jeffrey, Kimberly, Welk, and other defendants in Arkansas in July 2008, seeking to recover Kuelbs's allegedly wasted assets. A corporate defendant removed the trust's suit to federal court. The trust paid Donald and another attorney $17,092 for litigation-related expenses.

On August 28, 2008, Kuelbs irrevocably assigned "all causes of action [and] litigation" claims to the trust. The assignment was executed in Arkansas while Kuelbs was a citizen of Arkansas, and it referenced the ongoing Arkansas claims. An Arkansas district court declared her incompetent and appointed a bank as the guardian of her estate and Donald as her personal guardian. But after Donald failed to arrange for her proper medical care, the Arkansas court removed him as personal guardian in March 2009 and

4

appointed Kimberly in his place. In April, that court also prohibited Donald and Dena from contacting Kuelbs. And it appointed Kimberly as guardian of Kuelbs's estate in August. Kimberly transferred the guardianship to Scott County, Minnesota. The trust paid Donald and another Arkansas attorney $32,412 for litigation-related expenses for the federal court case and also for contesting Kimberly's guardianship petition.

The federal district court held in April 2009 that neither the trust nor Kuelbs could proceed as a plaintiff because neither was the real party in interest. It reasoned that, under Arkansas law, only an incompetent person's guardian can be a plaintiff in a lawsuit, not the incompetent person herself. And the trust could not make its assigned claim as the real party in interest because tort claims are not assignable in Arkansas. Donald, acting as trustee, appealed to the Eighth Circuit Court of Appeals claiming that the trust was the real party in interest. The Eighth Circuit affirmed the district court's decision that Arkansas law prohibited the assignment.

While the federal appeal was pending, Kimberly moved the Minnesota district court in Dakota County to require an accounting and terminate the trust. Donald and Dena answered the suit and maintained that Kimberly should be removed as guardian and conservator. Because the guardianship was now under Scott County jurisdiction, Donald and Dena were required to file a motion to transfer in Scott County. The Dakota County court ordered an accounting by Donald and Dena within 10 days and denied any relief in the guardianship case because the motion to transfer was filed in the wrong venue. Donald and Dena provided the required accounting.

After Donald and Dena provided their accounting, the trust filed a third-party complaint and asserted essentially the same claims against the same defendants previously asserted in the dismissed federal case. Donald and Dena filed a motion in Scott County to transfer venue for the guardianship to Dakota County. The district court in Scott County granted the transfer request in July 2010, and a district court judge sitting in Dakota County was assigned to hear the consolidated cases. Donald then filed a motion to remove Kimberly as guardian and conservator and to order Jeffrey to prepare an accounting.

Not surprisingly, by then little remained of Kuelbs's assets. The district court terminated the trust and dismissed its third-party complaint. It held that res judicata and collateral estoppel barred the third-party complaint because it was litigated in the prior federal litigation. It found that the trust could no longer fulfill its purpose due to the lack of funds. It demanded that the trustees prepare a final accounting. The trust moved for amended findings and a new trial, but the district court denied the motions. The trust protectively appealed the district court's order, but we dismissed the appeal. Donald and Dena prepared the final accounting in February 2011.

Kimberly objected to the trustees' final accounting and moved to amend her original complaint to bring additional claims against Donald and Dena. The district court granted Kimberly's petition to amend in August 2011, citing judicial economy. It stated that Kimberly could "amend her petition to include additional claims against Donald Hill and Edward[e]na Hill." It noted that the claims "could be brought in an independent civil action," but that the action "almost certainly would be consolidated."

6

Kimberly amended her complaint. She alleged generally that Donald and Dena had engaged in fraud. Donald and Dena moved to dismiss the new claims, and the district court granted the motion in February 2012. The district court, however, did not offer any clear reason for dismissing the amended claims. It merely summed up the trustees' arguments for dismissal as "(1) the additional claims require Minnesota law to be applied to conduct that occurred in Wisconsin or Arkansas, (2) many of the additional claims have been the subject of lengthy court proceedings in Arkansas, and (3) the additional claims exceed the scope of this proceeding as provided in Minnesota Statutes 501B.16," and then stated, "For the most part, this court agrees." It explained that the only issues still left to consider were whether the trustees' final accounting was appropriate and whether Kimberly should remain as guardian. Kimberly appealed this decision, and we rejected the appeal because it was not from a final order.

The district court held a four-day hearing in early 2013 to determine the approval of the final accounting of the trust, the approval of the accounting of the conservatorship, whether Kimberly should be removed as the guardian, and whether the Arkansas no-contact order should remain in place. It found that the trustees' accounting was appropriate and that the trustees did not engage in fraud or breach their fiduciary duties, that the payments that the trustees made from the trust were reasonable, that Kimberly should be removed as the conservator but should remain as the guardian, that a new conservator should be appointed, that the new conservator should investigate Kimberly's various accountings and attempt to recover Kuelbs's lost assets, and that the Arkansas no-contact order should be lifted. Kimberly and Jeffrey filed an appeal in September 2013

7

with the assistance of counsel. Counsel withdrew from the case, so Kimberly and Jeffrey filed a pro se brief. Donald and Dena responded and filed a related appeal. They contend that the district court erred by terminating the trust. Neither Jeffrey nor Kimberly responded to the related appeal.

## DECISION

### I

The appellant has the burden to demonstrate error. *Horodenski v. Lyndale Green Townhome Ass'n, Inc.*, 804 N.W.2d 366, 372 (Minn. App. 2011) (citing *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975)). Jeffrey and Kimberly Hill include various arguments in a lengthy brief devoid of any supporting legal authority. They appear to strongly disagree with the district court's conclusions on a number of issues and with its factual findings, but it is difficult to discern their specific arguments. They appear to challenge the district court's finding that the trust was valid, its jurisdiction over the matters and decision to hear the conservatorship and trust issues in a combined proceeding, its approval of the trustees' accounting, and its denial of their amended petition against the trustees.

We accepted informal briefing from Kimberly and Jeffrey, and we note that pro se parties have the right to participate in the legal process. We will reasonably accommodate a pro se party so long as no prejudice results, *see Kasson State Bank v. Haugen*, 410 N.W.2d 392, 395 (Minn. App. 1987), but pro se appellants still must, at the very least, communicate clearly to the court the relief they seek, *Carpenter v. Woodvale, Inc.*, 400 N.W.2d 727, 729 (Minn. 1987). Self-representation does not relieve a party of the duty to

follow court rules and procedures. *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001) ("Although some accommodations may be made for pro se litigants, this court has repeatedly emphasized that pro se litigants are generally held to the same standards as attorneys.").

Although we agreed to accept Jeffrey and Kimberly's brief despite its formal deficiencies, we cannot give any weight to their unclear, legally unsupported arguments. They seem to restate the facts as they would have us construe them, but they do not explain why we should disregard the district court's version of the facts and accept theirs. They also do not cite record support for their factual representations. We require that record citations accompany all material facts in a brief. Minn. R. Civ. App. P. 128.02, subd. 1(c), 128.03. The requirement is especially necessary in a case like this one, where the record is extensive. *See Hecker v. Hecker*, 543 N.W.2d 678, 681–82 n.2 (Minn. App. 1996), *aff'd*, 568 N.W.2d 705 (1997). Arguments also require support. We will refuse to consider propositions that are unsupported by legal argument or authority "unless prejudicial error is obvious on mere inspection." *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (quotation omitted). Jeffrey and Kimberly's brief does not cogently explain why we should reverse the district court, and it fails to support conclusory statements with citations to caselaw or other legal authority. We have considered their arguments in the best possible light, and, in comparison with the record and the district court's decision, we see no error. Jeffrey and Kimberly have failed to meet their burden to convince us that any prejudicial error occurred.

## II

Donald and Dena assert in their related appeal that the district court erred by terminating the trust. The district court terminated the trust under Minnesota Statutes section 501B.03 (2012) because the trust no longer had assets to support its purpose. Donald and Dena maintain that the roughly $600 balance found to remain in the trust is misleadingly low because the trust also has the right to pursue several allegedly valuable tort claims on behalf of Kuelbs. They contend that the district court erroneously concluded that collateral estoppel or res judicata bars the trust from bringing tort claims. Whether collateral estoppel applies presents a mixed question of law and fact that we review de novo. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). Whether res judicata applies is a question of law that we review de novo. *Id.* at 840.

Collateral estoppel and res judicata are related doctrines that prohibit a party from relitigating claims that were already heard in another court or should have been heard in another court. *See id.* at 837. To apply collateral estoppel, four requirements must be present: "(1) the issue is identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party in the prior case; and (4) there was a full and fair opportunity to be heard on the issue." *In re Trust Created by Hill*, 499 N.W.2d 475, 484 (Minn. App. 1993), *review denied* (Minn. July 15, 1993). Res judicata is related but broader. *Hauschildt*, 686 N.W.2d at 837. It prevents parties from litigating all claims that arose from the same circumstance, even if they are raised under new legal theories. *Id.* Res judicata bars a claim when four elements are met: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same

10

parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter." *Rucker v. Schmidt*, 794 N.W.2d 114, 117 (Minn. 2011).

The trustees' argument is somewhat convoluted. Donald and Dena contend that neither res judicata nor collateral estoppel apply because the federal case was dismissed for a procedural defect rather than on the merits of the underlying tort claims. They then maintain that the trust can file the claims in Minnesota because, under Nevada or Minnesota law (which they assert govern the trust), the assignment of Kuelbs's tort claims would have been valid. In other words, they seem to contend that the assignment was valid because the laws under which the trust is *now* governed would allow Kuelbs to assign her tort claims, and the federal courts' holdings that the *assignment*—signed in Arkansas in 2008 while Kuelbs was a resident of Arkansas—was invalid no longer have any effect.

We think this reasoning is erroneous. What current law might allow under the changed circumstances is irrelevant to the question answered by the federal courts. The issue is not whether Kuelbs could *now* assign her claims under Minnesota or Nevada law. Rather, the issue is whether the assignment made in Arkansas *in 2008* was valid. Although Donald and Dena repeatedly assert that these claims were validly assigned to the trust, they do so without any legal support. The validity of the assignment was expressly addressed and ruled on by the federal courts.

In the federal litigation, the district court dismissed the underlying claims on procedural grounds, finding that the trust was not the real party in interest. The Eighth

11

Circuit affirmed. In explaining why the trust was not the real party in interest, the court explained that under Arkansas law, tort claims are not assignable. *Kuelbs v. Hill*, 615 F.3d 1037, 1041 (8th Cir. 2010) (citing *Mallory v. Hartsfield, Almand & Grisham, LLP*, 86 S.W.3d 863, 866 (Ark. 2002)), *cert. denied*, 131 S. Ct. 1679 (2011). It held that the assignment was invalid. *Id.* Donald and Dena disagree with this ruling. Donald asserts that because the *trust* should be viewed under Nevada or Minnesota law, the *assignment to the trust* (executed in Arkansas while Kuelbs was a citizen of Arkansas, made to pursue and combat claims in Arkansas, and declared invalid in federal court under Arkansas law) should be retroactively validated under Minnesota or Nevada law. The trustees had an adequate opportunity to litigate this issue and explain why the assignment was valid, but they failed to do so. *See id.* at 1040 ("[The amended complaint] failed, however, to address the contention that . . . the Irrevocable Trust w[as] not [a] proper part[y]. . . . The district court further determined the tort claims purportedly assigned to the Irrevocable Trust were not assignable under Arkansas law."). While the tort claims were dismissed on procedural grounds and are not barred by res judicata, the issue asserted by the trustees—that the assignment was valid and that the trust could pursue those claims—was decided on the merits. Collateral estoppel applies to that issue.

**Affirmed.**