*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2285**

Jacquelyn K. Schneewind,
Appellant,

vs.

Austin Mutual Insurance Company,
Respondent.

**Filed September 8, 2014
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Hennepin County District Court
File No. 27-CV-12-12337

Stephen S. Eckman, Eckman, Strandness & Egan, P.A., Wayzata, Minnesota; and

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, Minnesota (for appellant)

William M. Hart, Melissa Dosick Riethof, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

In this appeal from judgment, appellant challenges the district court's determination that she is not entitled to underinsured motorist benefits. Appellant argues

that (1) because she obtained an assignment of her insurer's subrogation rights, the district court erred by reducing the jury's verdict to account for payments that were made by her health insurer and (2) she prevailed in her underinsured motorist claim because her actual damages exceed the tortfeasor's liability limits. Because the record does not establish that appellant acquired and asserted a subrogation interest greater than $10,696.91, we affirm the district court's collateral-source determination. But we reverse and remand for the district court to correct its erroneous entry of judgment in the amount of $82,642.70 for respondent.

## FACTS

Appellant Jacquelyn K. Schneewind was injured in a car accident. At the time of the accident, Schneewind was insured by respondent Austin Mutual Insurance Company under a policy that included underinsured motorist (UIM) benefits. Schneewind sued the other driver, who was insured under a $100,000 liability insurance policy. After notifying Austin Mutual, Schneewind settled with the tortfeasor for $45,000. She then commenced this action seeking UIM benefits from Austin Mutual. The district court held a jury trial, and the jury awarded Schneewind $120,100 in damages, $62,100 of which was for past medical expenses.

Austin Mutual moved the district court to deduct from the verdict amounts Schneewind received as collateral sources under Minn. Stat. § 548.251 (2012). Following a hearing, the district court found $62,100 in collateral sources, including $20,000 in no-fault benefits and $42,100 in health insurance benefits that were paid by Medica. The district court offset the $62,100 collateral-source deductions by $10,696.91,

2

based on evidence that Medica had asserted a subrogation right to this amount. The district court concluded that Schneewind's actual damages, after collateral-source deductions and other offsets, were $82,642.70. Because the actual damages were less than the limit of the tortfeasor's liability insurance, the district court concluded that Schneewind is not entitled to UIM benefits.

The district court's original order incorrectly awarded Schneewind $82,642.70 in damages. In an amended order, the district court dismissed Schneewind's claim. But the district court administrator entered judgment for Austin Mutual in the amount of $82,642.70.

Schneewind appeals, arguing that the district court erred in its collateral-source calculations and its resulting conclusion that she is not entitled to UIM benefits.

## DECISION

To prevail on a UIM claim following a settlement with the tortfeasor, the plaintiff must establish actual damages greater than the tortfeasor's liability limit. *See Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 601 (Minn. 2001) ("UIM benefits only become available if the tortfeasor's policy limits are less than the actual damages sustained by the injured UIM policyholder."). In determining whether an insured's actual damages exceed the tortfeasor's liability limits, a court must first reduce the jury's damages award by amounts the insured received as collateral-source benefits. "When an individual or entity other than a tortfeasor compensates a tort plaintiff for his or her injuries, the plaintiff has received a 'collateral-source benefit.'" *Swanson v. Brewster*, 784 N.W.2d 264, 268 (Minn. 2010). Collateral sources are defined, in relevant part, as payments

3

"related to the injury or disability in question made to the plaintiff, or on the plaintiff's

behalf up to the date of the verdict, by or pursuant to . . . health, accident and sickness, or

automobile accident insurance or liability insurance that provides health benefits or

income disability coverage." Minn. Stat. § 548.251, subd. 1.

> In a civil action, whether based on contract or tort, when liability is admitted or is determined by the trier of fact, and when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral sources. If the motion is filed, the parties shall *submit written evidence* of, and the court shall determine:
>
> (1) amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses *except those for which a subrogation right has been asserted*; and
> (2) amounts that have been paid, contributed, or forfeited by, or on behalf of, the plaintiff or members of the plaintiff's immediate family for the two-year period immediately before the accrual of the action to secure the right to a collateral source benefit that the plaintiff is receiving as a result of losses.

*Id.*, subd. 2 (emphasis added). "The court shall reduce the award by the amounts

determined under subdivision 2, clause (1), and offset any reduction in the award by the

amounts determined under subdivision 2, clause (2)." *Id.*, subd. 3(a).

The primary goal of the collateral-source statute "is to prevent double recoveries

by plaintiffs." *Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 331 (Minn. 1990).

"Procedurally, the statute prevents double recovery through a post-trial reduction by the

district court of a plaintiff's award." *Swanson*, 784 N.W.2d at 269. Because the issue

here involves application of the collateral-source statute to undisputed facts, our review is

4

de novo. *See Krutsch v. Walter H. Collin GmBh Verfahrenstechnik Und Maschinenfabric*, 495 N.W.2d 208, 214 (Minn. App. 1993), *review denied* (Minn. Mar. 22, 1993) (stating that "this court need not give deference to the [district] court's decision" when applying statutes to undisputed facts).

The district court's collateral-source calculations were as follows:

| | |
|---|---|
| Total Special Verdict: | $120,100.00 |
| No-Fault Benefits: | ($20,000.00) |
| Medica/Ingenix Payment and Negotiated Agreement: | ($42,100.00) |
| Subrogation Claim: | $10,696.91 |
| Medical Expenses Paid by Plaintiff: | $7,217.06 |
| Plaintiff's No-Fault Premium: | $49.00 |
| Plaintiff's Health Insurance Premiums for two years prior: | $6,679.73 |
| | |
| Total Verdict: | $82,642.70 |

Schneewind argues that the calculations should have been as follows:

| | |
|---|---|
| Total Special Verdict: | $120,100.00 |
| No-Fault Benefits: | ($20,000.00) |
| Medica/Ingenix Payment and Negotiated Agreement which Plaintiff bought: | ($0.00) |
| Plaintiff's No-Fault Premium: | $49.00 |
| | |
| Total Verdict: | $100,149.00 |

Under Schneewind's proposed calculations, her actual damages would exceed the tortfeasor's $100,000 policy limit and she would be entitled to UIM benefits.

The relevant distinction between the district court's calculations and Schneewind's proposed calculations is the court's deduction of the $42,100 Medica/Ingenix Payment

and Negotiated Agreement.[1]  The negotiated agreement reflects discounted charges that Medica negotiated with Schneewind's medical provider.  *See Swanson*, 784 N.W.2d at 265 (stating that negotiated-discount amounts are "amounts a plaintiff is billed by a medical provider but does not pay because the plaintiff's insurance provider negotiates a discount on the plaintiff's behalf").  Schneewind argues that Medica's $42,100 payment and negotiated discount should not be deducted because she has asserted a subrogation right to recover that amount.  *See* Minn. Stat. § 548.251, subd. 2 (excepting from collateral-source deductions the amounts of collateral sources "for which a subrogation right has been asserted").

Schneewind contends that (1) Medica had a right to subrogate both the payments that it made on her behalf as well as any negotiated discount, (2) she obtained that subrogation right from Medica, and (3) she has asserted the subrogation right on her own behalf.  Schneewind therefore concludes that the amount of Medica's payment and negotiated discount must be excluded from the collateral-source deductions.  *See id*.  Schneewind relies on *Swanson*, in which the supreme court held that "[n]egotiated-discount amounts . . . are 'collateral sources' for purposes of the collateral-source statute."  784 N.W.2d at 265.  According to Schneewind, because the discount that Medica negotiated on her behalf is a collateral source under *Swanson*, it may be subrogated.

---

[1] Although Schneewind assigns other errors to the district court's calculations, those errors would not alter the outcome.  In fact, the other alleged errors appear to benefit Schneewind.  We therefore do not address them.  *See Midway Ctr. Assocs. v. Midway Ctr. Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975) (stating that to prevail on appeal, an appellant must show both error and prejudice resulting from the error).

Schneewind's argument that an insurer may subrogate a discount that it negotiated on behalf of its insured is an issue of first impression.[2] We decline to address the merits of that issue because the record does not establish that the purported subrogation right was assigned to Schneewind.

We are persuaded by Austin Mutual's argument that there is a "complete absence of anything in the record showing any purported assignment of rights." The collateral-source statute requires parties to present "written evidence" of collateral sources that have been paid, including those amounts "for which a subrogation right has been asserted." Minn. Stat. § 548.251, subd. 2. The only written evidence showing an asserted subrogation right is a March 2011 letter and an August 2013 affidavit. The letter states that a company was hired "to pursue a recovery for the medical benefits that have been paid" amounting to "$10,486.96." The affidavit, submitted by defense counsel in support of Austin Mutual's collateral-source motion, states that "the attorney of record for defendant . . . was told that Medica's total subrogation claim . . . was $10,696.91," that Schneewind "satisfied the $10,696.91 subrogation claim," and that $10,696.91 was the "accurate amount of Medica's subrogation claim."

Schneewind did not present written evidence directly establishing that Medica assigned her its subrogation rights and if so, to what extent. *Cf. Kohn v. La Manufacture Francaise Des Pneumatiques Michelin*, 476 N.W.2d 184, 189 (Minn. App. 1991)

---

[2] For that reason, Schneewind relies on two district court opinions. Those opinions have no precedential value, and we do not consider them. *See Green v. BMW of N. Am., LLC*, 826 N.W.2d 530, 537 n.5 (Minn. 2013) (acknowledging that "district court orders lack precedential value").

7

(describing in detail settlement terms that assigned the insurer's subrogation interest to plaintiff), *review denied* (Minn. Dec. 13, 1991); *Buck v. Schneider*, 413 N.W.2d 569, 570 (Minn. App. 1987) (describing written settlement agreement in which employer/insurer assigned to plaintiff "any claim they might have to a subrogation interest"). Instead, Schneewind's attorney asserted at the collateral-source hearing that Schneewind "bought" Medica's subrogation claim. That assertion is inadequate for two reasons.

First, the attorney's assertion is not "written evidence" as is required by statute. Minn. Stat. § 548.251, subd. 2. Second, Schneewind's reliance on the supreme court's statement in *Swanson* that the purchaser of a subrogation claim "owns any right [the insurance company] had to recover any money paid by [it] on Swanson's behalf," is unavailing. *Swanson*, 784 N.W.2d at 267. The "only" issue before the supreme court in *Swanson* was "whether a negotiated discount like the one [the insurance company] negotiated with Swanson's medical providers is a collateral source under Minn. Stat. § 548.251 and should therefore be deducted from Swanson's damage award." *Id.* at 268. *Swanson* did not address application of the statutory subrogation exception under section 548.251, much less whether negotiated discounts may be subrogated.

At best, the record supports a determination that a subrogation right to $10,696.91 was assigned to and asserted by Schneewind. The district court appropriately offset that amount from its collateral-source deductions. There simply is no evidence that Medica asserted or assigned any other subrogation right. We therefore reject Schneewind's assignment of error to the district court's collateral-source calculations. And based on those calculations, the district court correctly concluded that Schneewind's damages are

less than the tortfeasor's policy limit and that Schneewind therefore is not entitled to UIM benefits.

The only error warranting relief is the judgment of $82,642.70 for Austin Mutual, which the parties agree is a mistake. We therefore reverse the judgment and remand for entry of judgment consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**