*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2049**

Ricky Lee McDeid,
Appellant,

vs.

Lucinda Jesson,
Commissioner of Human Services,
Respondent.

**Filed April 6, 2015
Affirmed; motion granted
Cleary, Chief Judge**

Aitkin County District Court
File No. 01-P4-99-000194

Marvin E. Ketola, McGregor, Minnesota (for appellant)

Lori Swanson, Attorney General, Anthony R. Noss, Assistant Attorney General, St. Paul,
Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Cleary, Chief Judge; and

Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CLEARY**, Chief Judge

Appellant Ricky Lee McDeid is in the Minnesota Sex Offender Treatment

Program (MSOP). He petitioned the special review board (SRB) for transfer to a non-

secure Department of Human Services facility. The SRB rejected the petition and appellant appealed to the judicial appeal panel (panel). The panel granted respondent's motion to dismiss appellant's petition under Minn. R. Civ. P. 41.02(b) and Minn. Stat. § 253D.28, subd. 2(e) (2014). Appellant made several arguments regarding the procedure used by the panel. While none of appellant's arguments regarding procedure constitute reversible error or require remand, we do find some of the procedural irregularities particularly troublesome and will highlight the problems below. Because the panel did not commit clear error by finding that appellant failed to prove by a preponderance of the evidence that transfer was appropriate, we affirm.

## FACTS

Appellant sexually assaulted four juvenile male victims between 1984 and 1991. He also admitted to sexually assaulting female and male family members, trading sex for drugs with a female who looked very young, and coercing a woman into being sexually active with him after she asked him to stop. Between the ages of four and fifteen, appellant states that he was sexually abused by numerous family members. Appellant received a 78-month sentence for the sexual assaults occurring between 1984 and 1991.

In 1996, appellant was placed in a half-way house on work release, with the condition that he have no direct or indirect contact with juvenile males. After several months, appellant was terminated from the half-way house for visiting the home of a female companion who had two juvenile males residing in the house which she failed to report. During a subsequent release, appellant again began a relationship with a female companion who had two young sons in violation of his release terms. Appellant

participated in sex offender treatment while on supervised release. He did not follow through with treatment, and his supervised release was finally revoked for continuing to violate its terms.

In December 1999, the district court indeterminately committed appellant as a Sexually Dangerous Person (SDP) and Sexually Psychopathic Personality (SPP). He was diagnosed with pedophilia (sexually attracted to males), narcissistic personality disorder with antisocial features, and paraphilia. He was also diagnosed with alcohol, cannabis, and cocaine dependence. After years of making no progress in MSOP, appellant began making progress throughout 2012, eventually entering phase two of the treatment program.

Appellant has also had several behavioral incidents over the last several years. In February 2013, appellant received a behavioral expectation report (BER) for boundary issues after he was seen rubbing his feet against those of a younger peer. A group progress note from the same time period states that appellant kissed the same peer on the back of the neck. Another group progress note describes how appellant criticized the treatment facility's policy on clients touching each other as being too harsh. Appellant said during a treatment session that he feels the treatment requirements were only "hoops to jump through to get out." Finally, appellant received a BER for giving another client a haircut in a janitor's closet.

Appellant received a sexual violence risk assessment prepared by a MSOP risk assessor before his hearing in front of the SRB. Appellant was given a "Static-99R," which is an actuarial tool used to predict sexual recidivism. Appellant was placed in the

low-risk category for the likelihood of sexual and violent recidivism based on the Static-99R. Appellant was given a "Stable-2007" test. The Stable-2007 examines 13 items and produces an estimate of risk, assesses treatment needs, and predicts recidivism in sexual offenders. Appellant scored an 11 on the Stable-2007, which places him in the moderate-need category.

Based on appellant's score on the Static-99R and the identified areas in need of treatment on the Stable-2007, the MSOP risk assessor identified appellant as being in the low nominal risk category for sexual recidivism, requiring a low level of supervision. The MSOP risk assessor noted areas of particular concern for appellant: his capacity for relationship stability, poor problem solving skills, deviant sexual preferences, significant social influences, lack of concern for others, negative emotionality, sex preoccupation, and lack of cooperation with supervision. Finally, the MSOP risk assessor gave her opinion, to a reasonable degree of psychological certainty, that appellant did not meet the requirements for a transfer into a less secure facility.

Appellant had a clinical interview with a second psychologist for the SRB treatment report. The psychologist reviewed appellant's file. The psychologist noted that appellant received a "need attention" designation on nine out of eleven matrix domains in an annual treatment report dated April 2013. Based on appellant's file and the clinical interview, MSOP recommended that appellant's petition be denied as premature.

The SRB rejected appellant's petition for transfer. He petitioned for rehearing and reconsideration in front of the panel. Appellant did not ask the panel to appoint an examiner before the hearing. Only two judges participated at the hearing; the third judge

4

was unable to attend due to unexplained complications. The panel gave the parties the option to have the third judge call in and participate telephonically, or to proceed with a two-judge panel. Both parties agreed to proceed with a two-judge panel. Appellant did not call any witnesses at the hearing, even though the panel told appellant that he would need to present any witnesses at that time if he wanted the panel to consider their testimony. The panel dismissed the petition for transfer. This appeal followed.

## D E C I S I O N

**I.      The panel did not commit clear error by dismissing appellant's petition for transfer to a non-secure facility**

The panel dismissed appellant's petition for transfer to a non-secure facility under Minn. R. Civ. P. 41.02(b). Appellant argues that he has proven by a preponderance of the evidence that he is entitled to a transfer. "[T]he findings of the judicial appeal panel concerning a petition for transfer are properly reviewed for clear error." *Foster v. Jesson*, 857 N.W.2d 545, 548 (Minn. App. 2014). "Findings of fact will not be reversed if the record as a whole sustains those findings." *Rydberg v. Goodno*, 689 N.W.2d 310, 313 (Minn. App. 2004).

A party seeking transfer out of a secure facility under section 253D.29 must establish by a preponderance of the evidence that transfer is appropriate. Minn. Stat. § 253D.28, subd. 2(e). "The preponderance of the evidence standard requires that to establish a fact, it must be more probable that the fact exists than that the contrary exists." *City of Lake Elmo v. Metro. Council*, 685 N.W.2d 1, 4 (Minn. 2004). The following

5

factors must be considered to determine whether a transfer out of a secure treatment facility is appropriate:

> (1) the person's clinical progress and present treatment needs;
> (2) the need for security to accomplish continuing treatment;
> (3) the need for continued institutionalization;
> (4) which facility can best meet the person's needs; and
> (5) whether transfer can be accomplished with a reasonable degree of safety for the public.

Minn. Stat. § 253D.29, subd. 1(b) (2014). This court will therefore have to determine whether the panel committed clear error by finding that appellant did not establish by a preponderance of the evidence that the transfer was appropriate. Before reviewing the panel's findings, we first have to address an evidentiary dispute to determine what evidence we can properly consider.

Appellant relied on four documents in his arguments to this court that were not in front of the panel or SRB: (1) a portion of an expert recommendation examining the MSOP program, (2) appellant's quarterly progress report from October 2014, (3) an assessment of appellant's sexual arousal or sexual interest, and (4) a full disclosure polygraph report in support of his petition for transfer. We cannot consider these documents because they were not admitted as exhibits to the SRB or considered by the panel—the evidence consists of reports not in existence at the time of those hearings— and we therefore grant respondent's motion to strike. *See Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988) ("An appellate court may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below."); *see also* Minn. Stat. § 253D.28, subd. 3 (2014) ("The judicial appeal

panel may not grant a transfer or provisional discharge on terms or conditions that were not presented to the special review board."). Most of appellant's arguments to this court were based on the inadmissible reports. Appellant will have the opportunity to submit more recent reports in a subsequent petition to the SRB. *See* Minn. Stat. § 253D.27, subd. 2 (2014) (establishing that a committed person may repetition the SRB for transfer six months after the exhaustion of appeals).

Next, we reach the substance of appellant's argument that the panel clearly erred by dismissing his petition for transfer to a less secure facility. The first factor to consider in evaluating whether a transfer is appropriate is "the person's clinical progress and present treatment needs." Minn. Stat. § 253D.29, subd. 1(b)(1). The panel focused on appellant's relationship with a peer for this factor. Appellant received a BER for rubbing feet with a peer and was also observed kissing the back of the same peer's neck. Instead of exploring his touching with the younger peer to further his treatment, appellant criticized the treatment center's policy on touching. The MSOP risk assessor believes that appellant can benefit from exploring his relationship with the peer. The MSOP risk assessor also stated that appellant's treatment needs would best be met by slowly reintegrating appellant in the advanced phases of treatment, while keeping him in a secure perimeter. Appellant notes that he received a score of a low level risk of recidivism and should be transferred to a less secure facility accordingly. The MSOP risk assessor considered the low level risk of recidivism when making the recommendation to keep appellant in a secure perimeter.

The second factor is "the need for security to accomplish continuing treatment." Minn. Stat. § 253D.29, subd. 1(b)(2). The panel noted that appellant was at a low risk for sexual recidivism, but relied on the MSOP risk assessor's report that appellant should develop a prevention plan and plan of entry into the community so that the level of safety afforded to the public could be adequately assessed before he is given more liberty. Appellant's relationship with a younger peer also weighs in favor of the need for security to accomplish continuing treatment, along with the several areas in need of treatment identified in the risk assessment.

The third factor is "the need for continued institutionalization." Minn. Stat. § 253D.29, subd. 1(b)(3). The panel noted appellant has not totally embraced treatment goals because he stated that he just needed to jump through hoops to get out. The evidence in the record supports respondent's argument that continued institutionalization is appropriate, including the need for further treatment as discussed under the first factor and the need to protect the public as discussed under the second factor.

The fourth factor is "which facility can best meet the person's needs." Minn. Stat. § 253D.29, subd. 1(b)(4). The panel found that appellant needs a higher level of supervision because of appellant's relationship with a peer and difficulty in understanding restrictions on physical contact. The MSOP risk assessor said that appellant needs more time to prepare for the independence provided to individuals in less secure facilities and emphasized that appellant's future transition should be gradual. A second psychologist examined appellant and recommended that he remain in a secure facility.

And the fifth factor is "whether transfer can be accomplished with a reasonable degree of safety for the public." Minn. Stat. § 253D.29, subd. 1(b)(5). The panel noted that appellant needs improvement in the areas of cooperation with rules and supervision, interpersonal skills, and sexuality. Appellant points to the low nominal risk category for sexual recidivism he received to demonstrate that he does not pose a significant risk to the public. However, we must also consider that the psychologist who calculated the low risk assessment also recommended that appellant remain in a secured facility for the time being based on appellant's treatment needs discussed in the third and fourth factors.

After examining the entire record and each factor, we conclude that the panel did not clearly err in holding that appellant failed to prove by a preponderance of the evidence that transfer was appropriate. Appellant has clearly made progress towards achieving his treatment goals, and, if he continues to make progress, he will put himself in a strong position for transfer to a less secure facility in a subsequent petition.

## II.     Appellant's procedural arguments do not require reversal or remand

Appellant makes a series of arguments against the procedures used by the panel. Although none of the arguments provide a basis for remand or reversal, we are troubled by the panel's apparent disregard for proper procedures or timely action on three occasions: (1) the panel took nearly 11 months to issue an opinion; (2) the panel referred to a second hearing and indicated there might be a chance for appellant to present evidence at a later time even though only one hearing was necessary; and (3) two judges attended the hearing, but three judges signed the order without explanation.

9

In denying appellant's request to remand the case for further hearings, we are mindful of the fact that appellant's best chance at getting a transfer to a less secure facility is to exhaust his appeal, wait six months, and then file another petition that includes the evidence we are statutorily barred from considering here. If we were to remand, the evidence most helpful to his petition would be inadmissible, and appellant could conceivably be stuck waiting another 11 months for an order from the panel. With the additional six-month waiting period under Minn. Stat. § 253D.27, subd. 2, a remand could preclude appellant from filing another petition for 17 months.

**A. The panel inexplicably took 11 months to issue an opinion, which adversely affects appellant's ability to exhaust his appeals and file another petition for transfer**

Appellant argues that the amount of time it took to resolve his petition for transfer constituted reversible error. The initial filing of the petition with the SRB was on December 26, 2012. After the SRB denied appellant's petition for transfer, appellant filed a petition for rehearing and reconsideration on September 16, 2013. The panel had a hearing on December 20, 2013, which was well within the 180 day window. *See* Minn. Stat. § 253D.28, subd. 1(b) (2014) ("The hearing must be held within 180 days of the filing of the petition unless an extension is granted for good cause."). The panel issued its opinion on November 12, 2014, nearly 11 months after the hearing.

Although section 253D.28 does not require the panel to issue an opinion within a certain time frame, meaning there is no reversible error here, we find the 11 months troubling. Appellant cannot file another petition for transfer until six months after the exhaustion of his appeals. Minn. Stat. § 253D.27, subd. 2. By unnecessarily prolonging

10

the appeals process, the panel potentially extended the length of time appellant has to remain in a restricted facility. If judicial appeal panels are systematically taking such an unnecessarily long time to issue opinions, we are concerned that patients could begin to believe that filing petitions for transfer is futile and give up on the treatment process.

**B.      The panel ambiguously alluded to a second hearing even though a petition for transfer only requires one hearing**

Appellant argues that the commissioner's exhibits should not have been accepted at the first phase of the hearing. All of the parties and the panel alluded to a second-phase hearing without considering whether it was necessary given the burdens of persuasion and production imposed on appellant at the initial hearing. Despite the ambiguity surrounding a second hearing, the panel told appellant that he should testify that day: "[w]ell I think today is the day to do that, to offer testimony," and appellant chose to submit his case essentially on the record.

Appellant mistakenly relies on *Coker v. Jesson*, 831 N.W.2d 483 (Minn. 2013) for support of his argument that the commissioner's exhibits should not have been admitted into evidence. *Coker* dealt with a petition for discharge that only imposes a burden of production on the petitioner. *Coker*, 831 N.W.2d at 490-91 (interpreting Minn. Stat. § 253B.19, subd. 2(c) which says that a party petitioning for discharge or provisional discharge "bears the burden of going forward with the evidence"). When considering a petition for discharge or provisional discharge, the hearing in which the committed person produces evidence is referred to as the first-phase hearing. *Id.* at 486. If the petitioner meets the burden of production, then the opposing party has to prove by clear

and convincing evidence that the discharge or provisional discharge should be denied—this is referred to as the second-phase hearing. *Id.*

In contrast to a petition for discharge, a petition for transfer imposes the burdens of production and persuasion on the petitioner. Minn. Stat. § 253D.28, subd. 2(e). A judicial appeal panel sits as trier of fact to determine whether a petitioner proves by a preponderance of the evidence that transfer is appropriate. *Foster*, 857 N.W.2d at 548. The description of discharge hearings as first-phase and second-phase is therefore inapplicable to transfer hearings.

Unfortunately, the panel made several references to a phase-two hearing that was not required. After referencing a potential phase-two hearing, the panel specifically told appellant that he should testify that day because he would not have another opportunity. Thus, even though the panel sent ambiguous messages regarding a second hearing, it made clear to appellant that he had to testify that day. Because appellant had the opportunity to testify and present evidence, there is no reversible error. *See Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (Minn. 1975) (stating that "error without prejudice is not ground for reversal"). In the future, however, judicial appeal panels should make it clear to petitioners and attorneys that there only is one hearing when considering a petition for transfer.

C. **There was no reversible error in two judges hearing the case and three judges signing the order**

At appellant's hearing, the parties agreed to proceed with a two-judge panel. The third judge was unable to attend due to unexplained complications. Three judges

eventually signed the November 20, 2014 order dismissing appellant's petition. The order said that the case "came on for trial before the undersigned Judges of the Judicial Appeal Panel." The order does not address the fact that only two of the undersigned judges were present at the hearing, nor does it explain what role the third judge took in the deliberations. Appellant challenges the procedure of two judges attending the hearing but three judges signing the order. Appellant does not argue that three judges were required to hear the case.

Minn. Stat. § 253D.28, subd. 1(a) permits a petitioner to request a rehearing and reconsideration of a recommendation of the SRB by a judicial appeal panel established under Minn. Stat. § 253B.19, subd. 1 (2014). Section 253B.19 states: "Only three judges need hear any case." *Id.* In contrast to the requirement that only three judges hear a case, "[a] majority of the judicial appeal panel shall rule upon the petition." Minn. Stat. § 253D.28, subd. 3. The commitment statute requires three judges to hear a case, even though it only requires two judges to rule on a petition. Appellant does not challenge the procedure of using a two-judge panel, so we make no ruling on that matter.

Appellant challenges the procedure of three judges signing the order, but only two judges attending the hearing. The procedure used by the panel is peculiar, and it is especially worrisome that the panel did not address the third judge's absence from the hearing and subsequent signature in its order. Instead of addressing the procedural irregularity in a memo, the panel stated in its opinion that the case came before all three of the undersigned judges. Perhaps the third judge did participate in the deliberations by

13

reviewing the transcript. We are left to speculate in the absence of any sort of explanation.

Despite this procedural irregularity, there was not reversible error. The two judges who attended the hearing signed the order, which fulfilled the statutory requirement for a decision on the petition for transfer. *Id.* (requiring a majority of the panel to rule on a petition). The procedure did not create a prejudicial error requiring a new hearing. *See* Minn. R. Civ. P. 61 (stating that "no error or defect in any ruling or order . . . is ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice"); *see also Midway Ctr. Assocs.*, 306 Minn. at 356, 237 N.W.2d at 78 (stating that "error without prejudice is not ground for reversal").

**Affirmed; motion granted.**